IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| PAUL V. DIAMOND, | * | |
|     Plaintiff, | | |
| | * | CIVIL NO.: WMN-09-865 |
| v. | | |
| | * | |
| BON SECOURS HOSPITAL, | | |
|     Defendant. | * | |

* * * * * * * * * * * * *

## REPORT AND RECOMMENDATION

This Report and Recommendation addresses Defendant Bon Secours Baltimore Health System's Second Motion for Sanctions, Paper No. 62, and Plaintiff Paul V. Diamond's June 14, 2010 Letter, Paper No. 63.[1] I find that a hearing is unnecessary on this Motion. *See* Local Rule 105.6. For the reasons stated herein, I recommend that Defendant's motion should be GRANTED IN PART and DENIED IN PART.

**I.     Factual and Procedural History**

The discovery disputes in this case first came to the Court's attention on August 26, 2009, when Plaintiff, who is proceeding *pro se*, wrote a letter informing Judge Nickerson that he would not produce "all documents" about the witnesses he planned to call or other evidence that Defendant sought in discovery; instead, the documents would "be provided to the judge during the trial." Pl.'s Aug. 26, 2009 Ltr., Paper No. 15. Plaintiff alleged that when his wife brought a similar claim against the same employer, "[h]er witnesses were tampered with" and the evidence she provided to Defendant was not "presented to the judge." *Id.* Additionally, in that letter and

---

[1] On September 17, 2009, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302, Judge Nickerson referred this case to me to resolve discovery disputes and related scheduling matters. Paper No. 20.

in a second one dated September 14, 2009, Plaintiff asked the Court to "dismiss" Defendant's motion to compel Plaintiff's discovery responses. *Id.*; Paper No. 16. However, Defendant had not moved to compel Plaintiff's responses; Defense counsel had e-mailed Plaintiff to "request a telephonic conference to discuss this matter as required by Local Rule 104.7 (as a prerequisite to a Motion to Compel)," and served the motion on Plaintiff, as required by Local R. 104.8.a. Paper Nos. 16-1, 16-2. Defendant filed its Motion to Compel Full and Complete Responses to Interrogatories and Document Requests on September 16, 2009. Paper No. 19.

At a hearing on Defendant's motion on October 28, 2009, recognizing that Mr. Diamond appears *pro se*, the Court explained to him the mechanics of discovery and what information he was required to provide in response to Defendant's requests. Hr'g Rec. Oct. 28, 2009, at 10:36 a.m. The Court provided Mr. Diamond with a bound copy of the Federal Rules of Civil Procedure for the duration of the litigation. *Id.* at 10:37 a.m. The Court ordered that Plaintiff submit to a limited telephone deposition instead of ordering Plaintiff to provide further interrogatory responses, out of concern that a *pro* se plaintiff would have difficulty answering written interrogatories. A limited deposition would be more expeditious, less burdensome, and less likely to generate further discovery disputes. *See* Fed. R. Civ. P. 26(b)(2)(C). The Court limited the deposition to the three interrogatories that Plaintiff had not answered fully and any follow up questions necessary to obtain the information sought in those three questions, and it permitted Plaintiff to tape record the deposition. Hr'g Rec. Oct. 28, 2009, at 11:00 a.m. The Court did not intend for the limited telephone deposition to preclude a more comprehensive deposition of Plaintiff on matters beyond the scope of the limited deposition. The limited telephonic deposition took place on November 6, 2009. Pl.'s March 16, 2010 Ltr., Paper No. 48.

Defendant subsequently scheduled a more comprehensive video deposition of Plaintiff for November 24, 2009, and properly notified Mr. Diamond on November 6, 2009. Def.'s Mem. of Law in Support of Mot. to Extend Case Mgmt. Deadlines & Compel Pl.'s Dep. Ex. A, Paper No. 30-2. Plaintiff informed Defense counsel by e-mail on November 10 and 15, 2009, that he would not agree to be deposed until Defendant responded to the interrogatories that Plaintiff had served on it. *Id.* Ex. C & G. On November 24, 2009, the same day on which the deposition was to occur, the Court received a letter from Plaintiff, dated November 23, 2009, asking the Court to reschedule his deposition and to allow someone to attend the deposition with him, tape record it, and "take notes." Pl.'s Nov. 23, 2009 Ltr. 3, Paper No. 29. Plaintiff alleged that when Defense counsel had deposed Plaintiff in Plaintiff's wife's lawsuit, "they manipulated, edited and altered the transcripts and testimony." *Id.* Plaintiff also complained that Defendant had not provided appropriate responses to Plaintiff's discovery requests. *Id.* at 1, 3

On December 2, 2009, Defendant moved to extend the discovery deadlines and to compel Plaintiff's deposition. Paper No. 30. By letter order, the Court extended the deadlines "for the limited purpose of resolving any Motion to Compel filed by Plaintiff and to enable Defendant to take Plaintiff's deposition." Dec. 8, 2009 Ltr. Order, Paper No. 32. The order provided that Plaintiff could "have someone with him to take notes" at his deposition, but could not tape record it. *Id.* The Court attached a copy of Local Rule 104.7 and 104.8 for Plaintiff's reference. Paper No. 32-1.

On December 21, 2009, and January 6, 2010, Plaintiff filed motions to compel discovery responses from Defendant. Paper Nos. 36 and 37. He also complained about inaccuracies in the transcript of his telephonic deposition and submitted his errata sheet for the transcript. Jan. 6, 2010 Ltr. Ex. G, Paper No. 55. In a February 16, 2010 letter order further addressing

Defendant's motion to compel Plaintiff's deposition, as well as Plaintiff's motions to compel discovery responses, the Court ordered Plaintiff to appear for his deposition within twenty-one days of that order, reiterated that Plaintiff could not tape record his deposition, and explained how Plaintiff could obtain a copy of the October 28, 2009 hearing transcript. Paper No. 43. On February 18, 2010, Defendant served on Plaintiff, by regular mail and e-mail, a Notice to take his deposition on March 1, 2010, in Baltimore, Maryland. Def.'s Mot. to Compel Ex. A., Paper No. 46-2. On February 25, 2010, Plaintiff filed a letter addressed to Judge Nickerson, objecting to the undersigned's February 16, 2010 letter order. Pl.'s Feb. 25, 2010 Ltr., Paper No. 45. However, Plaintiff did not move for a protective order or seek a stay of discovery. *Id.*

Plaintiff's objection did not stay discovery. *See* Local Rule 301.5.a. While Plaintiff's objection was pending, Defense counsel traveled to Baltimore from Philadelphia for the March 1, 2010 deposition. Diamond Dep. 2:5-3:9, March 1, 2010, Paper No. 46-3. A court reporter and Defendant's videographer also were present, but Plaintiff failed to appear. *Id.* at 2:18-19, 3:11-12, 4:14-15. Defense counsel called Plaintiff's phone number at approximately 9:30 a.m., but Plaintiff did not answer; Defense counsel left his phone number, but Plaintiff did not return the call. *Id.* at 4:15-19. On March 8, 2010, Defendant moved for sanctions and asked the Court to compel, once again, Plaintiff's appearance for his deposition. Def.'s Mot. for Sanctions, Paper No. 46.

On March 10, 2010, Judge Nickerson affirmed the undersigned's February 16, 2010 letter order. March 10, 2010 Ltr. Order, Paper No. 47. Judge Nickerson explained that my characterization of Plaintiff's "'voluntary resignation' in the face of harassment" was "not intended to, nor does it, undermine Plaintiff's constructive discharge claim," and that there was "no requirement that hearings be held in every instance" of a discovery dispute. *Id.* Judge

Nickerson further explained that Plaintiff's request to tape record his deposition was "counter to this Court's Discovery Guideline 6(i) and thus there was no error in refusing to grant it," and that the recording of the October 28, 2009 hearing was not available because the "transcript prepared by the court reporter is the official record of the proceeding." *Id.*

On March 16, 2010, Plaintiff informed Judge Nickerson that although he received notice that his video deposition had been rescheduled for March 19, 2010, he would not be available and that he "would like to get some explanations" before the case proceeded. Pl.'s March 16, 2010 Ltr. 1, Paper No. 48. He contended that "crucial statements were either altered or removed" in the transcript of his November 6, 2009 telephonic deposition, and therefore he refused to appear for another deposition until the parties and the Court "solve[d] this issue." *Id.* at 3. Notwithstanding Judge Nickerson's explanation of the unavailability of a tape recording of the October 28, 2009 hearing, Plaintiff said that he "believe[d] the concerned party has the right to obtain a copy of the tape just like the transcript." *Id.* He claimed that "there is some unfairness involved" in how his case has been handled. *Id.* at 4.

On April 15, 2010, at which time Plaintiff still had not responded to Defendant's Motion for Sanctions,[2] I granted Defendant's motion, treating it as a motion for sanctions and to compel Plaintiff's deposition. April 15, 2010 Ltr. Order 2-3, Paper No. 49. I noted that Mr. Diamond had been required (but failed) to appear for his deposition by the February 16, 2010 Court order and by Fed. R. Civ. P. 30(a)(1). *Id.* at 3. I ordered that Mr. Diamond's deposition take place at the United States Courthouse in Baltimore, Maryland, on May 3, 2010. *Id.* at 5. Additionally, I ordered Plaintiff to "pay the reasonable costs and attorney's fees that Defendant incurred with regard to the March 1, 2010 deposition and this Motion for Sanctions." *Id.* I noted that the

---

[2] As noted, *infra*, Plaintiff filed an untimely response, in the form of a letter addressed to Judge Nickerson, on May 5, 2010, after the Court ruled on Defendant's motion.

5

Order would "act as a final warning to Plaintiff, putting Mr. Diamond on notice that any future evasive action may result in a dismissal of the case." *Id.*

Defense counsel filed a Bill of Costs on April 23, 2010, and on May 5, 2010, after I had rescheduled the deposition for May 13, 2010, at Defendant's request, Paper Nos. 51 & 52, Plaintiff wrote a letter to Judge Nickerson, "in response to" my April 15, 2010 Letter Order, Defendant's Motion for Sanctions, and Defendant's request to reschedule the deposition. Pl.'s May 5, 2010 Ltr. 1, Paper No. 53. As a response to Defendant's motion, Plaintiff's letter not only was untimely, *see* Local Rule 105.2.a, but also was filed after the Court issued its ruling, *see* April 15, 2010 Ltr. Order. Plaintiff asked the Court to cancel the deposition and argued that he "should not be held responsible for any attorney['s] fees and/or costs" associated with the March 1, 2010 deposition. *Id.* He complained that over a month had passed and Judge Nickerson still had not responded to his March 16, 2010 letter. *Id.* Alleging that "[t]here has been a lot of manipulation in the District Court and blatant support for the defendant," Plaintiff said: "Until all the issues I have raised are resolved and I get a rational explanation for the District Court's actions, I will not be in a position to make myself available for the deposition." *Id.*

On May 7, 2010, Judge Nickerson responded to Plaintiff's May 5, 2010 letter, explaining that he had not wanted to interfere while motions were pending, because the undersigned is handling the case for discovery. J. Nickerson's May 7, 2010 Ltr. 1, Paper No. 56. Judge Nickerson acknowledged that "a few of the errors were substantive" in the 55-page transcript of Plaintiff's November 6, 2009 telephonic deposition and said that he could, "without subscribing to [Plaintiff's] belief that they were intentional, nonetheless understand [his] concerns regarding the transcription process." *Id.* at 2. Thus, he recommended that I allow Plaintiff to record his "deposition that *will go forward* on May 13th." *Id.* (emphasis added). Accordingly, I ordered

6

the same day that Plaintiff would be allowed to make his own recording of his deposition.  Paper No. 57.

Having received the April 15, 2010 Letter Order, ordering his appearance at the deposition, and Judge Nickerson's May 7, 2010 letter, stating that the deposition "will go forward on May 13th," Plaintiff again wrote to Judge Nickerson on May 11, 2010, insisting that he was "not available for the deposition scheduled for May 13, 2010" and would not be ready for a deposition until Judge Nickerson provided "a complete explanation" for each issue that Plaintiff raised.  Pl.'s May 11, 2010 Ltr. 1, Paper No. 58.  Plaintiff stated that he wanted to "have a discovery dispute hearing," and he argued that he "should be allowed to depose the defendant" before submitting to his own deposition.  *Id.*

Because Plaintiff's correspondence with the Court did not stay the Court-ordered deposition, Defense counsel arranged for a court reporter and videographer for the deposition and traveled from Philadelphia to Baltimore on May 13, 2010.  Def.'s Second Mot. for Sanctions 4.  Defense counsel stated on the record that he was "aware that Mr. Diamond ha[d] written a letter to the court stating that he did not believe that he needed to appear for his deposition pursuant to some discovery disputes earlier this week," and that Defense counsel "advised Mr. Diamond that it was [counsel's] understanding that there was an order of the court . . . directing that the deposition take place, and that without a contrary order or protective order, that [Defense counsel] would be present for the deposition."  Diamond Dep. 6:8-18, June 2, 2010, Paper No. 62-2.  Plaintiff did not move for a protective order, and again, Plaintiff failed to appear.  *Id.* at 6:7-8.

On May 24, 2010, having reviewed Defendant's Bill of Costs and Plaintiff's May 5, 2010 letter, I ordered Plaintiff to pay $3,145.00 to Defendant for costs and attorney's fees associated

with Plaintiff's failure to attend his deposition on March 1, 2010. May 24, 2010 Ltr. Order 3, Paper No. 60. On June 1, 2010, Plaintiff filed an objection to the May 24, 2010 Letter Order. Paper No. 61.

On June 2, 2010, Defendant filed a Second Motion for Sanctions, pursuant to Fed. R. Civ. P. 37(d) and 41(b), for Plaintiff's failure to appear for his Court-ordered deposition for a second time. Def.'s Second Mot. for Sanctions 2, 4. Defendant argued that Mr. Diamond's case should be dismissed because Mr. Diamond was "'personally responsible'" for his failure to appear for his own depositions. *Id.* at 7-8 (citation omitted). According to Defendant, Plaintiff's failure to appear monetarily prejudiced Defendant with unnecessary expenses and attorney's fees associated with these depositions. *Id.* at 8. In Defendant's view, the Court has a strong interest in deterring Plaintiff's ongoing "vexatious and dilatory behavior" that included failing to appear for his depositions and barraging the Court and Defendant with correspondence attributing "'sinister motives to every error made or ruling that does not go in [his] favor.'" *Id.* (quoting May 7, 2010 Order). Also, Defendant argued that the only way for the Court to deter Plaintiff's conduct effectively is to dismiss the case because Mr. Diamond had "no intention of ever paying the monetary sanctions imposed by the Court" and "no intention of appearing for a deposition." *Id.* at 8-9.

Plaintiff wrote a letter to Judge Nickerson on June 14, 2010, in which Plaintiff responded to Defendant's Second Motion for Sanctions and also objected to my Order awarding sanctions. Pl.'s June 14, 2010 Ltr. Mr. Diamond again complained that his questions had not been answered, adding that the "principles of natural justice requires that [he] be entitled to know why those questionnaires have not been answered." *Id.* at 1. Mr. Diamond alleged that "everyone is working in consonance to the wrongful benefit of the Defendant and thus cause injustice to

8

[Plaintiff]." *Id.* Additionally, Mr. Diamond argued that Defendant took advantage of the fact that Judge Nickerson had not answered his letter when Defendant filed its Second Motion for Sanctions. *Id.*

On June 17, 2010, Judge Nickerson issued a letter to Mr. Diamond, stating that he would "rule on [Plaintiff's] objections to Judge Grimm's decision in due course," after the undersigned ruled on Defendant's Second Motion for Sanctions and Mr. Diamond's response. June 17, 2010 Ltr., Paper No. 64. Judge Nickerson stated that Plaintiff could respond further to Defendant's Second Motion for Sanctions by June 21, 2010, notwithstanding Mr. Diamond's June 14, 2010 Letter to Judge Nickerson. *Id.* Mr. Diamond has not filed an additional response, and therefore I will consider his June 14, 2010 Letter to Judge Nickerson as a response to Defendant's Second Motion for Sanctions.

## II. Discussion

### A. Dismissal

"*Pro se* litigants are entitled to some deference from courts." *Ballard v. Carlson*, 882 F.2d 93, 96 (4th Cir. 1989). Generally, the deference relates to construing a *pro se* plaintiff's complaint. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that courts hold *pro se* complaints "to less stringent standards than formal pleadings drafted by lawyers"); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978) (stating that, in cases involving civil rights plaintiffs, "'the district court must examine the pro se complaint to see whether the facts alleged, or the set of facts which the plaintiff might be able to prove, could very well provide a basis for recovery'" and that the court "'will not permit technical pleading requirements to defeat the vindication of any constitutional rights which the plaintiff alleges'") (citation omitted). Nonetheless, *pro se* litigants and other litigants alike "are subject to the time requirements and respect for court

orders without which effective judicial administration would be impossible." *Ballard*, 882 F.2d at 96; *see Birl v. Estelle,* 660 F.2d 592, 593 (5th Cir. 1981) (dismissing untimely appeal because "the right of self-representation does not exempt a party from compliance with relevant rules of procedural and substantive law"). Thus, as the *Birl* Court, 660 F.2d at 593, observed:

> One who proceeds *pro se* with full knowledge and understanding of the risks involved acquires no greater rights than a litigant represented by a lawyer, *United States v. Pinkey*, 548 F.2d 305, 311 (10th Cir. 1977), unless a liberal construction of properly filed pleadings be considered an enhanced right. *See Haines v. Kerner*, 404 U.S. 519, 520 . . . (1972). Rather, such a litigant acquiesces in and subjects himself to the established rules of practice and procedure. *United States v. Pinkey*, 548 F.2d at 311; *Larkin v. United Ass'n of Plumbers and Pipefitters*, 338 F.2d 335, 336 (1st Cir.), *cert. denied*, 380 U.S. 975 . . . (1964).

Moreover, district courts have the authority to dismiss cases under Fed. R. Civ. P. 37(d) and 41(b), as part of the courts' "comprehensive arsenal of Federal Rules and statutes to protect themselves from abuse." *Chambers v. NASCO, Inc*., 501 U.S. 32, 62 (1991). Rule 37(d) provides that the Court may "order sanctions if . . . a party . . . fails, after being served with proper notice, to appear for that person's deposition," and that possible sanctions "include any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)." Fed. R. Civ. P. 37(d)(1)(A(i), (d)(3). Rule 37(b)(2)(A)(v) states that the court may "dismiss[] the action or proceeding in whole or in part." Further, Fed. R. Civ. P. 41(b) provides that the court may dismiss an action "[i]f the plaintiff fails to prosecute or to comply with . . . a court order." Thus, even if the plaintiff appears *pro se*, the court may grant an involuntary dismissal pursuant to either Rule if the *pro se* litigant's refusal to comply with procedural requirements or court orders warrant such a sanction. *See, e.g*., *Middlebrooks v. Sebelius*, Civ. No. PJM 04-2792, 2009 WL 2514111 (D. Md. Aug. 13, 2009) (dismissing *pro se* plaintiff's case pursuant to Rule 37(d); *Taylor v. Fresh Fields Mkts., Inc.*, No. CIV. A. 94-0055-C, 1996 WL 403787 (W.D. Va. June 27, 1996), *aff'd*, 112 F.3d 510 (4th Cir. 1997) (dismissing *pro se* plaintiff's case pursuant to Rules 37(d) and 41(b)); *Robinson v. Yellow*

*Freight Sys.*, 132 F.R.D. 424 (W.D.N.C. 1990), *aff'd*, 923 F.2d 849 (4th Cir. 1991) (upholding dismissal with prejudice of *pro se* plaintiff's claim pursuant to Fed. R. Civ. P. 37(b) and (d)); *see also Link v. Wabash*, 370 U.S. 626 (1962) (upholding district court's *sua sponte* dismissal of plaintiff's complaint pursuant to Rule 41(b) because plaintiff's counsel failed to appear for a pre-trial conference and because the case was "the 'oldest' case on the District Court's civil docket"); *Beyah v. Coughlin*, 113 F.3d 1229, 1997 WL 280043 (2d Cir. 1997) (unpublished opinion) (dismissing an incarcerated *pro se* plaintiff's claims pursuant to Fed. R. Civ. P. 37 after plaintiff refused to be deposed and later failed to appear for a court-ordered deposition); *Phipps v. Blakeney*, 8 F.3d 788 (11th Cir. 1993) (upholding trial court's dismissal of plaintiff's *pro se* claims with prejudice for his failure to appear at three court-ordered depositions); *Peterson v. Archstone*, 677 F. Supp. 2d 167 (D.D.C. 2010) (dismissing *pro se* plaintiff's complaint pursuant to Rule 41(b) after plaintiff failed to appear for a court-ordered motions hearing, even though plaintiff claimed that she believed her pending motions stayed all proceedings); *Taub v. Gulf Oil Corp.*, 94 F.R.D. 198 (E.D. Pa. 1982) (dismissing *pro se* plaintiff's claims with prejudice pursuant to Fed. R. Civ. P. 37(d) after plaintiff failed to comply with multiple court orders compelling plaintiff to attend a deposition).

However, "[d]ismissal with prejudice is ordinarily reserved for the most egregious cases." *Sadler v. Dimensions Health Corp.*, 178 F.R.D. 56, 59 (D. Md. 1998) (citing *Dove v. Codesco*, 569 F.2d 807, 810 (4th Cir. 1978), in which the Court stated that dismissal with prejudice under Rule 41(b) was only for "clear record of delay or contumacious conduct by the plaintiff"). Indeed, "only the most flagrant case, where the party's noncompliance represents bad faith and callous disregard for the authority of the district court and the Rules, [should] result in the extreme sanction of dismissal or judgment by default." *Mut. Fed. Sav. & Loan Ass'n v.*

*Richards & Assocs., Inc.*, 872 F.2d 88, 92 (4th Cir. 1989). To that end, the Court applies a four-part test before dismissing a case pursuant to Rule 37(d). *Id.* The Court considers:

> (1) whether the noncomplying party acted in bad faith; (2) the amount of prejudice his noncompliance caused his adversary, which necessarily includes an inquiry into the materiality of the evidence he failed to produce; (3) the need for deterrence of the particular sort of noncompliance; and (4) the effectiveness of less drastic sanctions.

*Id.* Prior to dismissal under Rule 41(b), the court must consider four similar factors: "(1) the plaintiff's degree of personal responsibility; (2) the amount of prejudice caused the defendant; (3) the presence of a drawn out history of deliberately proceeding in a dilatory fashion; and (4) the effectiveness of sanctions less drastic than dismissal." *Hillig v. Comm'r of Internal Review*, 916 F.2d 171, 174 (4th Cir. 1990). "[T]he Court will combine the two tests in determining if dismissal is appropriate under Rules 37(d) and 41(b)" because the legal standards for dismissal under both rules are "'virtually the same.'" *Taylor*, 1996 WL 403787, at *2 (quoting *Carter v. Univ. of W. Va. Sys.*, 23 F.3d 400, 1994 WL 192031, at *2 (4th Cir. 1994)); *see, e.g.*, *Tabor v. E.J. Patterson, Inc.*, No. Civ.A. 98-2438, 1999 WL 52144 (E.D. La. 1999) (analyzing facts under Fed. R. Civ. P. Rules 37(d) and 41(b) together and dismissing without prejudice *pro se* plaintiff's claims where plaintiff twice failed to appear for his scheduled deposition).

*Middlebrooks*, 2009 WL 2514111, provides helpful guidance. There, the *pro se* plaintiff "failed to appear for properly noticed depositions, failed to supplement discovery regarding interrogatories, and failed to file a status report, despite the Court's directives that she do so." *Id.* at *1. The Court "specifically warned" the plaintiff that failure to respond to discovery requests, "including failure to appear for deposition, could result in dismissal of her case." *Id.* The Court said that the plaintiff "despite adequate warning of foreseeable consequences, . . . frustrated the legitimate discovery process." *Id.* at *2. Analyzing the four factors, it concluded that "[h]er

12

continuous failure to attend deposition sessions, coupled with her continuous failure to respond to document requests and interrogatories, combine to warrant dismissal" pursuant to Rule 37(d). *Id.* at *2. Specifically, the Court noted that the plaintiff "blatantly ignored Court Orders" without offering an excuse; caused the defendant prejudice by depriving it of information; exhibited behaviors that "go to the heart of the court process and totally inhibit[] a just resolution of disputes" and therefore "need[] to be deterred." *Id.* at *3. Moreover, the Court had already tried other forms of sanctions without success. *Id.*

*Taylor*, 1996 WL 403787, also is informative. There, the *pro se* plaintiff missed court-imposed deadlines, failed to appear for two hearings, failed to produce documents, and failed to appear for his properly-noticed deposition. *Id.* at *1-2. The court dismissed his case, reasoning that the plaintiff, who had no "careless attorney" to blame, was "personally responsible" for his dilatory tactics, which prejudiced the defendant by causing the defendant to "incur[] unnecessary expenses." *Id.* at *2. The court noted that "plaintiff has a demonstrated history of deliberately frustrating the court's efforts to deal with his case," for example by "occup[ying] the court with unfounded accusations [of bias] against the Magistrate [Judge] instead of litigating his case." *Id.* The court concluded that dismissal was the only appropriate sanction because the plaintiff had informed the court that he was "financially ruined." *Id.*

In *Robinson*, 132 F.R.D. at 425, when the plaintiff delayed his deposition for "health and financial reasons," the court warned of sanctions including dismissal for failure to appear at his deposition if his excuse were not substantiated. Plaintiff maintained his refusal to appear even after the court ordered that the deposition take place only thirteen miles from the plaintiff's home. *Id.* at 426. The court dismissed the case pursuant to Rule 37(d), in part because the "Plaintiff willfully failed to appear" each of the three times that the defendant scheduled his

13

deposition, two of which were court-ordered, thereby exhibiting bad faith and "effectively estopp[ing] Defendant from preparing this case," to Defendant's obvious detriment. *Id.* at 428. The court stated that "the need for deterrence of this type of noncompliance is vital for the efficient administration of justice" because "[i]f parties were permitted to routinely ignore notices for depositions, the Court would be required to intervene in the discovery process of every case." *Id.* Noting that "it ha[d] exercised a great deal of patience with Plaintiff" without results and that monetary sanctions would not be effective because the plaintiff was indigent, the court concluded that dismissal was the only appropriate sanction. *Id.* at 428-29.

It is true that some courts have held that dismissal may be premature if a *pro se* litigant is not warned that continued non-compliance may result in dismissal. *See Camper v. Home Quality Mgmt. Inc.,* 200 F.R.D. 516, 519 (D. Md. 2000) (denying defendant's motion for sanctions requesting dismissal of plaintiffs' action because "plaintiffs had no notice or warning that failure to appear might result in dismissal of their action"). In *Camper*, the plaintiffs had failed to appear once for a deposition when the defendant sought dismissal, and their attorney offered "explanations for the difficulty in scheduling depositions and transporting the plaintiffs to Baltimore." *Id.* The Court said that "this one act is neither severe nor pervasive enough to warrant dismissal." *Id.* Here, in contrast, Mr. Diamond twice failed to appear for his deposition and the Court stated explicitly after his first failure to appear: "[T]his Order shall act as a final warning to Plaintiff, putting Mr. Diamond on notice that any future evasive action may result in a dismissal of the case." Apr. 15, 2010 Ltr. Order 5.

With regard to the first factor under both tests, the plaintiff's bad faith or personal responsibility, Mr. Diamond failed to appear for two properly noticed, court-ordered depositions. Diamond Dep. 4:14-15, March 1, 2010; Diamond Dep. 6:7-8, June 2, 2010. This behavior alone

14

has supported a finding of bad faith. *E.g.*, *Robinson*, 132 F.R.D at 427-28 (holding that *pro se* plaintiff acted in bad faith by failing to appear in at least two depositions after being properly notified both times); *see also Technical Chem. Co. v. IG-LO Prods. Corp.*, 812 F.2d 222, 224 (5th Cir. 1987) (same). Moreover, as a *pro se* plaintiff, Mr. Diamond had no attorney to blame for his failure to appear at his scheduled depositions. *See Parks v. Huff*, 955 F.2d 42, 1992 WL 21363, at *2 (4th Cir. 1992) (unpublished opinion). Rather, Plaintiff made clear prior to the time scheduled for the depositions that he had no intention of appearing at the depositions unless his own conditions were met. *See* Pl.'s May 5, 2010 Ltr.; Nov. 23, 2009 Ltr. 1. Failure to appear for a deposition "is not excused on the ground that the discovery sought was objectionable, unless the party failing to act has a pending motion for a protective order under Rule 26(c)." Fed. R. Civ. P. 37(d)(2). Plaintiff never moved for a protective order. Additionally, Plaintiff's insistence that he would not attend his deposition if he could not record it cannot justify his failure to appear or the delay he caused. *See id.* Not only did his requests not operate to stay the Court orders that he appear, *see* Local Rule 301.5.a, but also, the depositions would have been recorded because a videographer was present on both occasions, and on May 7, 2010, prior to the second scheduled deposition, the Court ordered that Plaintiff also could tape record the deposition. May 7, 2010 Ltr. Order. Also, Plaintiff had full responsibility for his filings, often filed in response to this Court's orders, rather than Defendant's filings, or after the time for responding to Defendant's motions had passed.

As noted, the second factor is the prejudice caused Defendant, for which I must consider whether the evidence withheld was material. Mr. Diamond's repeated failure to appear for properly noticed depositions prejudiced Defendant because Defendant had to prepare for Mr. Diamond's deposition twice, engage a court reporter and a videographer twice, travel from

15

Philadelphia to Baltimore twice, and prepare two motions for sanctions. Further, were the case to move forward, Defendant's inability to secure answers to the deposition questions it planned to pose would be prejudicial to Defendant's ability to defend. Mr. Diamond is the plaintiff, and it cannot be disputed that his refusal to be deposed regarding the factual issues for his claims is prejudicial to Defendant. Defendant also had to review and respond to Mr. Diamond's multiple, repetitive filings regarding his refusal to appear for his deposition. Plaintiff's actions caused Defendant to incur thousands of dollars in attorney's fees and delayed resolution of this case, and therefore constitute prejudice. *See, e.g.*, *Parks*, 1992 WL 21363, at *2 (stating that expense and time lost constitute prejudice).

With regard to the third factor, Plaintiff's history of dilatoriness or noncompliance and the need to deter such behavior, the record of Plaintiff's failure to comply with Court orders and the resulting delay in discovery is substantial. The original discovery deadline was October 5, 2009, Paper No. 13, and unrelated to the discovery disputes at hand, the parties asked for an extension to December 4, 2009, Paper No. 17, which the Court granted, Paper No. 18. Originally, Plaintiff's deposition was scheduled for November 24, 2009, Def.'s Mem. of Law in Support of Mot. to Extend Case Mgmt. Deadlines & Compel Pl.'s Dep. Ex. A, but over half a year later, Plaintiff still has not been deposed. On three separate occasions, the Court ordered that Plaintiff appear for his deposition, yet Plaintiff has refused. The Court had to extend the discovery deadline twice as a result of Plaintiff's failures to appear, *see* December 8, 2009 Ltr. Order; February 16, 2010 Ltr. Order 3. Thus, Plaintiff's conduct, including his disregard for court orders, caused considerable delay in the discovery process. Conduct such as "stalling and ignoring direct orders of the court . . . must obviously be deterred." *Mut. Fed. Sav. & Loan Ass'n*, 872 F.2d at 93.

Plaintiff's history and likely future of noncompliance also is evident in other respects. The Court provided Plaintiff with a copy of the Federal Rules of Civil Procedure and informed him about the Local Rules for the U.S. District Court for the District of Maryland, yet Plaintiff filed a tardy response to Defendant's first motion for sanctions—not responding until after the Court had ruled—and routinely chose to correspond to Judge Nickerson, rather than respond to Defendant's motions directly. Plaintiff stated that he would not appear for his deposition unless he could record the deposition, even though Discovery Guideline 6(i) for this Court provides that "Except for the person recording the deposition in accordance with Fed. R. Civ. P. 30(b), during the taking of a deposition no one may record the testimony without the consent of the deponent and all parties in attendance, unless otherwise ordered by the Court." Further, a videographer was present both times, and the Court addressed Mr. Diamond's concerns about the accuracy of the deposition transcript by allowing him to record the May 13, 2010 deposition, yet Plaintiff still did not appear. May 7, 2010 Ltr. Order. Plaintiff's refusal to be deposed until Defendant answered his interrogatories also was without merit, because one party's failure to respond to a discovery request does not excuse the other party from responding. *See* Fed. R. Civ. P. 37(d)(2) (party has no excuse for failing to appear unless it has a motion for protective order pending). Even when Defendant informed Plaintiff that the only way for him to postpone the deposition was through a protective order, Plaintiff still did not avail himself of that option. Plaintiff also stated that he would not comply with the Court's order that he pay sanctions. May 5, 2010 Ltr. 2. These actions manifest Plaintiff's purposeful and repeated disregard of orders of this Court, which undermines the ability of the Court to manage the conduct of this case effectively and fairly.

As for the last factor, the effectiveness of lesser sanctions than dismissal, it is unlikely that sanctions other than dismissal would effectively deter Mr. Diamond's actions in the future. The Court already "has exercised a great deal of patience with Plaintiff" by responding to his letters directed to Judges Nickerson and the undersigned and by giving Mr. Diamond two opportunities and five and a half months beyond the originally scheduled date to appear for his deposition. *See Robinson*, 132 F.R.D at 429 (stating that the Court gave the plaintiff three opportunities in six months to comply with the order to "make himself available to be deposed"). Further, the Court already clearly warned Mr. Diamond that any future evasive action may result in dismissal of the case, to no avail. Apr. 15, 2010 Ltr. Order 5. And, the Court already has imposed monetary sanctions on Mr. Diamond for failing to appear for his deposition, but this has not deterred him from continued discovery disputes. *Id.*; *see* Pl.'s June 14, 2010 Ltr. These measures clearly have not worked.

In sum, Plaintiff has exhibited contumacious behavior toward the Defendant and the Court, and he is solely responsible for his behavior. Mr. Diamond's conduct has caused monetary prejudice to Defendant, and by withholding evidence, Plaintiff has hindered Defendant's ability to defend its case. Plaintiff has a substantial history of engaging in stall tactics and refusing to comply with Court orders. Moreover, Mr. Diamond's repeated failures to comply with Court orders, even after the gravest of warnings and monetary sanctions, demonstrate that no measure other than dismissal would be effective and enable this case to proceed forward to its resolution on the merits. Accordingly, I recommend that, pursuant to Fed. R. Civ. P. 37(d) and 41(b), the Court dismiss with prejudice all of Plaintiff's claims against Defendant.

**B. Attorney's Fees**

Fed. R. Civ. P. 37(d)(3) provides, in part, that "the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." In the April 15, 2010 Letter Order, I concluded that there were no circumstances rendering "an award of expenses unjust." The circumstances have changed. This Court already has imposed monetary sanctions on Plaintiff. *See* April 15, 2010 Ltr. Order. And, I am recommending dismissal of his case. Given these circumstances, an additional monetary sanction is unjust. *See Miller v. Sprint Commc'ns*, No. 3:97CV156-P, 1997 WL 910426 (W.D.N.C. Dec. 31, 1997) (dismissing the case but not awarding expenses because awarding expenses would not be in the interest of justice due to *pro se* plaintiff's indigent status); *Pack v. S.C. Wildlife & Marine Res. Dep't*, 92 F.R.D. 22 (D.S.C. 1981) (dismissing pursuant to Rule 37(b) and Rule 41(b) but choosing not to sanction plaintiff as well). Therefore, I recommend that the Court not order Mr. Diamond to pay the reasonable costs and attorney's fees that Defendant incurred with regard to the May 13, 2010 deposition and its Second Motion for Sanctions.

The parties have fourteen (14) days in which to file objections to this Report and Recommendation pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5.b.[3]


Dated: <u>July 6, 2010</u>　　　　　　　　　　　　　　　_____/s/_____
　　　　　　　　　　　　　　　　　　　　　　　　　Paul W. Grimm
　　　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

lmy

---

[3] The Court acknowledges the research assistance provided by Matt Haven, a student at the University of Maryland School of Law, who interned in Chambers this summer.